# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DAVID L. FINNEY, )
)
       Plaintiff, )
)
v. ) Case No. CIV-16-488-SPS
)
COMMISSIONER of the Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

The claimant David L. Finney requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born April 13, 1977, and was thirty-four years old at the time of the administrative hearing (Tr. 30). He completed the ninth grade while attending special education classes, and has worked as a tow truck driver, plumber helper, container filler, spot welder, auto detailer, and heavy delivery driver (Tr. 179, 407). The claimant alleges that he has been unable to work since November 8, 2009, due to getting hurt on the job which caused back trouble and neck and shoulder pain, learning disability/dyslexia, arthritis, migraines, throat swollen a lot, low blood sugar, epilepsy, chronic bronchitis/allergies, high blood pressure, high cholesterol, ulcer, and depression (Tr. 178).

### Procedural History

On April 30, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ John W. Belcher, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 25, 2012 (Tr. 13-21), but this Court reversed in Case No. CIV-14-18-SPS, and remanded because there were conflicts determined with each of the jobs identified at step five (Tr. 493-501). On remand, ALJ Belcher conducted a second administrative hearing and again determined that the claimant was not disabled in an opinion dated February 24, 2016 (Tr. 394-408). The Appeals Council again denied review, so ALJ Belcher's 2016 written opinion

represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift/carry/push/pull twenty pound occasionally and ten pounds frequently; stand/walk for one hour each, ten to thirty minutes at one time in an eight-hour workday; and sit six to eight hours in an eight-hour workday. He could occasionally climb stairs/ladders/ropes/scaffolding, balance, bend/stoop, kneel, crouch, crawl, reach bilaterally, and was limited to occasional exposure to temperature extremes (cold below 32 degrees or heat above 90 degrees Fahrenheit), fumes, odors, dust, toxins, gases, and poor ventilation. Further, the ALJ determined that he should avoid hazards, fast-paced machinery, unprotected heights, and driving. The ALJ determined that the claimant can do simple and routine tasks allowing for a full range of unskilled work, that his work must be in a habituated work setting and be object oriented (habituated meaning relatively performing the same task throughout the day, but tolerating one or two changes of task during the day, and object-oriented meaning working with things rather than people), and that he must have no more than superficial contact with the public, coworkers, and supervisors (contact similar to that of a grocery clerk with coworkers and supervisors). The ALJ thus concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, semi-conductor (Tr. 406-408).

### Review

The claimant contends that the ALJ erred by: (i) failing to account for all his severe impairments in formulating the RFC, including his education level, which ultimately resulted in errors at step five; and (ii) failing to properly evaluate the medical evidence related to his mental impairments. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The ALJ determined that the claimant had the severe impairments of seizures, degenerative disc disease of the lumbar and cervical spine, shoulder arthritis, chronic obstructive pulmonary disease, hypoglycemia, migraines/headaches, obesity, learning disorder, and depression, as well as the non-severe impairments of hypertension, migraines, high cholesterol, and history of ulcers (Tr. 397).

The evidence in the record related to the claimant's intellectual functioning and reading level indicate that he was reading at a first grade level, and was considered to have borderline intellectual functioning. In a Third Party Function Report completed by the claimant's mother, she indicated that he cannot read (Tr. 193).

On August 30, 2010, Maribeth Spanier, Ph.D. conducted a mental status/diagnostic examination of the claimant (Tr. 337). As relevant to this appeal, she noted the claimant's own reports that he could not read, and that he was in special education during his academic career (Tr. 338, 341). Upon mental status questioning, Dr. Spanier found that the claimant was operating at the Borderline level of intellectual functioning, or below, and that his verbal skills were adequate but that he reported he cannot read or write (Tr. 341-342). She assessed him with, *inter alia*, rule out Borderline intellectual functioning, and found that his judgment was below average based on his overall cognitive level, ability to think

abstractly, and ability to function appropriately socially and emotionally (Tr. 342). She found the tests were valid and there were no signs of malingering, and that he would need assistance with funds (Tr. 343).

On September 28, 2010, state reviewing physician Phillip Massad, Ph.D. reviewed the evidence and determined that the claimant had borderline intellectual functioning, noting Dr. Spanier's consultative examination findings (Tr. 295, 303). Upon review, this assessment was affirmed, with a notation that the claimant "does not follow spoken or written instructions well" (Tr. 317).

On May 8, 2012, Larry Vaught, Ph.D., conducted a neuropsychological evaluation of the claimant (Tr. 377). He administered a number of tests, including the WRAT-III, which resulting in finding that the claimant had a first grade reading level, consistent with his history of learning difficulties (Tr. 379, 381). He assessed the claimant with, *inter alia*, learning disorder not otherwise specified (Tr. 381).

At the administrative hearing, the ALJ propounded a hypothetical to the vocational expert ("VE") which encompassed the RFC above, and characterized the claimant as having a limited education (Tr. 441-443). In response to the hypothetical, the VE responded that the only job available was that of semi-conductor bonder, but there was no further discussion of the claimant's reading ability (Tr. 443).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as the evidence in the record. He noted the Third Party Function Reports, but inappropriately dismissed them as lay opinions and "potentially influenced by loyalties of family," and he did not acknowledge the claimant's mother's statement that the claimant

cannot read (Tr. 401). The ALJ further summarized Dr. Spanier's mental status examination, including her finding that he was operating at the borderline level of intellectual functioning (Tr. 403-404). The ALJ also summarized Dr. Vaught's assessment, noting the claimant's first grade reading level and diagnosis of learning disorder not otherwise specified (Tr. 404). He gave substantial weight to Dr. Vaught's findings, except for his findings that the claimant had marked limitations in his ability to respond appropriately to usual work situations and changes in a routine work setting (Tr. 405). He did not provide any evaluation of Dr. Spanier's assessment. He then assigned some weight to the state reviewing physician opinions but added limitations related to a habituated setting and object-oriented tasks, as well as superficial contact (Tr. 406). No mention was made of the claimant's reading level other than in reciting the evidence in the record.

The claimant argues that the ALJ failed to account for his inability to read and write, which affected both the step four and step five findings. The Court agrees. "[T]he numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." 20 C.F.R. § 416.964(b). Although a ninth grade level of formal education (what the claimant is reported to have completed while in special education classes) is generally classified as a "limited education," *see* 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3), the regulations *do allow* for that classification to be modified where, as here, there is evidence that the claimant's actual educational abilities contradict the completed grade level. In this case, the claimant, his mother, the state reviewing physician, Dr. Spanier, and Dr. Vaught

all indicated that the claimant was at best, reading at a first grade level. The ALJ nevertheless found without explanation that the claimant has a "limited education" (Tr. 407), which is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs," where "a 7th grade through the 11th grade level of formal education is a limited education"  *See* 20 C.F.R. §§ 404.1564(b)(3) and 416.964(b)(3).

In contrast, "[i]lliteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."  20 C.F.R. §§ 404.1564(b)(1) and 416.964(b)(1). Additionally, a marginal education is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs," and formal schooling at a sixth grade level or less is considered marginal. *See* 20 C.F.R. §§ 404.1564(b)(2) and 416.964(b)(2). Despite the evidence in the record to the contrary, the ALJ nevertheless found without explanation that the claimant had a limited education. *See Dollar v. Bowen*, 821 F.2d 530, 535 (10th Cir. 1987) ("The record establishes that Mr. Dollar, although able to sign his name, was functionally illiterate and able to manage only simple financial transactions that do not require reading or writing. A review of the record has revealed absolutely no evidence to the contrary. . . . As a matter of law, the application of grid rules based on his eighth grade education was in error. Thus, the record does not contain substantial evidence to support the ALJ's implicit finding that Mr. Dollar was literate.")  [internal citations omitted].

Additionally, the ALJ erred in properly evaluating the opinions provided by Dr. Spanier and Dr. Vaught. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ recited Dr. Vaught's IQ assessment favorably in support of his determination that the claimant had borderline intellectual functioning, and also was aware that both Dr. Spanier and Dr. Vaught found the claimant had limited intellectual abilities (Tr. 24, 29). Nevertheless, the ALJ determined, without explanation as to why he disagreed with these experts, that the claimant had a limited education that allowed him to perform the full range of unskilled work, except that he must be in a habituated work setting and be object oriented (Tr. 399). *See, e. g., Haga v. Astrue*, 482

F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin*, 365 F.3d at 1219. *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

The above-mentioned errors regarding the claimant's education level and ability to perform unskilled work were not harmless. In this case, the ALJ found that the claimant could perform less than the full range of light work, and the ALJ turned to a vocational expert (VE) at the administrative hearing to determine what kind of work the claimant could perform. When given a hypothetical including a person the same age, limited education, and past relevant work as the claimant, and the ability to do light work with the additional limitations as described above, the VE testified that such a person would be able to perform the job of semi-conductor bonder (Tr. 443). The ALJ did not question further about modifying the education level or the skill level, and ultimately found that the claimant had that RFC, and that he could perform this job (Tr. 407-408). This is error because the job identified by the VE, as defined in the Dictionary of Occupational Title, requires a Level 2 reading level, which is defined as: "Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes." *See* DICOT § 726.685-066 (Semi-

conductor Bonder). Because the ALJ failed to reconcile the claimant's inability to read with a finding that he can perform a job requiring him to read 5,000-6,000 words, his decision is not based on substantial evidence.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should resolve the conflict as to the claimant's literacy and the skill level of the work he can perform, and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**